Judge Richman, and may it please the Court, with the Court's indulgence, I would like to assume familiarity with the arguments that have just been completed because they deal with a very similar issue. And I would like to go directly to questions the Court asks that I take a slightly different perspective on than the previous advocates. In Barnes, and I think this goes to Chief Judge Richman's questions from the previous argument and Judge Costas, in Barnes the Court acknowledges the existence of the well-established exception for illegal sentence or sentence above the statutory maximum. The problem is Mr. Barnes did not raise that well-established Fifth Circuit exception, and they say so. That opinion drew a dissent, as I recall, regarding whether or not the appellant should have been expected to raise that or not, but it does acknowledge the existence of that exception. And in regards to whether the U.S. Supreme Court has addressed appeal waivers and the exceptions to them, I would say yes. And we have cited that case, Garza v. Idaho, I think is the name. Now, that is a case about whether or not the rule of presumed deficient performance for failing to file a notice of appeal applies in a circumstance where the plea agreement contains a putative waiver of appellate rights. The Supreme Court says yes, and one of the reasons is because every jurisdiction recognizes that there are exceptions to such appeal waivers, and so essentially it's something for the appellate court to decide, not something for counsel to invoke on behalf of her client by not filing the appeal at all. So how does that affect my case? Your Honor, there are three reasons why we are asking you to reverse the district court's enforcement of an appellate and post-conviction waiver against an undisputed Davis claim. This is not a situation where there is some other set of facts. You couldn't prove the crime that was committed and pleaded guilty to without proving some other qualifying predicate. Kidnapping just doesn't count, and that's undisputed. It is not a crime. It is imaginary. There are three reasons why the court was wrong to enforce the waiver by dismissing my client's motion, and there are the three issues upon which the court recognized they were reasonably debatable among jurists. Number one, the government forfeited or waived its right to invoke that affirmative defense. Number two, these waivers, these broadly worded waivers, simply do not apply to this kind of claim in the Fifth Circuit, and I invoke well-established, longer-than-I've-been-a-lawyer exceptions to the enforcement of these waivers. And third, if both of those fail, then I would say that this Court should recognize a limited miscarriage of justice exception, though, like I say, if I can convince you that these exceptions are already well-established, it doesn't bother me whether you call it miscarriage of justice or not. That is, in fact, what this Court has done historically and should do here. If we rule in your favor, would we be creating a split with the Seventh, the Ninth, and now the Sixth on this precise Davis issue? If we were having lunch over drinks after the argument and I were telling you the truth, I would say I cannot make sense of what the courts of appeals have done with regard to these questions, neither between the circuits nor within a single circuit. For every one of the decisions that comes out one way, a knowledgeable advocate can cite other examples. So I would say most other circuits' cases should be limited to their facts and the arguments that were raised. I would say that you would not create a split if you were to rule for me. If there is, in fact, a split, which I think was your question, and I am attempting to avoid, I would say that split already exists, because this Court has recognized for many years an exception to these type of broadly worded waivers when the facts alleged do not constitute an offense, do not constitute the offense charged. This Court? Those are cases, I assume, but you tell me if I'm wrong, where it was not a crime at the time that the plea was made, which is sort of almost kind of per se irrational. Nobody gives up, subjects themselves to prison time or to a conviction if they can avoid it at that time. The difference here is the potential future, or am I misunderstanding? Well, I wouldn't say you're misunderstanding, Judge Hobart. I have two responses to that. Number one, for the second part of the question, I'm not sure that it's irrational for Spruill to do what Spruill did at the plea. Everyone thought that the proceeding where he went to the DA's office and they said, you could have a hearing about this, he said, no, it's good, I don't want to see her ever again, that that was good enough. It was rational that he made the decision, so it wasn't so much a hold the defendant to his choices sort of thing. In fact, it's the opposite. Spruill says in a civilized system of justice, it doesn't matter what the incentives were before, we will not stand for someone being convicted of a nonexistent offense. But second— Okay, I assume you would accept that we can at least entertain, if you want to call it a fiction, the notion that we don't accept plea bargains when, in fact, you should not have been there in the first place at that time. It just strikes me that the notion that the law can change is inevitable and, you know, as sure as the day is long, I mean, you're going to have potential changes in the law. How do we have pleas if that's always the excuse to get out of a plea? I would say, number one, it's fairly rare that it happens. And number two, this is getting back to the broader point of your earlier question. The law, I would say, did not change when we're talking about substantive law, when we're talking about what is the reach of the federal statute. Spruill, prior to Spruill, there was no decision that we could point to that said this kind of a proceeding is not good enough to trigger the firearm prohibition. So, in other words, it's the same sort of uncertainty about what future courts might decide. That, I would say, is not the reason why Spruill and White and Baymont and all of those decisions have come out the way that they did. It's not because the decision was bad when you made it. It's in spite of it being a good decision, right? We, as a court, as a justice system, won't stand for it. I'm sorry. Why was it a good decision in cases like White and Spruill? Whether it was a good decision or not, I would say, independent of whether or not it was a good deal for the defendant. And Picazzo-Lucas, recognizing that it's an unpublished decision, that is one where, if you listen to the argument and read the briefing, this is a big concern because it was undoubtedly a good deal for Mr. Picazzo-Lucas. And in fact, the attorney, the appellate attorney, had filed an Anders brief. And this Court, again, because these exceptions are so well established that you can't withdraw on this, you have to come and argue this to us. And ultimately, the Court vacated the plea, not because the defendant made a bad choice, it may have been a very wise choice, but because these are not waivers that will be enforced in a court of justice. Now, in our case, Your Honor, it's now conceded, right? There's no dispute over the merits of this. I also want to address — Unlike the last case, and you were just alluding to this, your client had charges dismissed as part of the plea agreement. Your client had a stipulated sentence that was about half the guideline range. If you win, if Davis means this one conviction can't stand, why wouldn't the remedy be to just withdraw the guilty plea that has this invalid waiver and go back to the beginning? So the government has asked the Court, if it finds in our favor, to send the case to the district court to decide the remedy, and I've got no objection to that, because, as you suggest, there are a lot of complicated questions about this. I do want to say that in terms of the dismissed charge, it was not more serious than the charges to which he pleaded guilty to. If you added that charge, a conviction for that charge, into this record, I don't think it moves the guidelines at all. I mean, the government is the only one who's given us what the range would be on that charge alone, but — The dismissed drug charges. Dismissed drug charges is a nothing burger. But the stipulated sentence is a big burger. The stipulated sentence is a big burger, but I would point you to pages 378 to 381 of the sentencing hearing, the beginning of it, where the district judge says, let's talk about the stipulated sentence. It looks like it's a big change. And the government argues very aggressively that this aggregate sentence is the appropriate one, given all of the facts and circumstances of the case. Let me ask you quickly, how do we determine if a charged crime was more serious or not than the crime to which the defendant pled guilty? Is it the statutory maximum in the sentence? How do we judge that? Because it seems to me guidelines are affected by all kinds of things that are specifically focused on that defendant. So it seems like to me we have to be categorical rather than a specific defendant in determining what's more serious. I agree, Your Honor. I will say that this separate charge inquiry is specific to, I think, the procedural default under Bousley. So I don't know if you have to do it here or not. But if you did, I would say minimums, you know, the charge that was wrong was more severe than the one that was dismissed. Maximums, the charge that was wrong is more severe than the one that was dismissed. The relationship of that count to the other counts, the charge that was wrong requires consecutive service. The charge that was dismissed invites concurrent service in terms of the guidelines. On this record, it doesn't move the button at all. Maybe one level, if the offense level assigned to that conduct is high enough to get another unit under the miserable grouping rules that are in Chapter 3, Part D, but very little change about that. It is not a situation where they had the client dead to rights on a murder and they let him plead guilty to tax evasion, and then he's relying on a decision to say, aha, now I get out of tax evasion, too. That's not what we have. So I don't know which of those things I need to win. I'm saying if we have to ask this question at all, one or more of those will satisfy the fact this is not a more serious charge. The government defended the sentence as an appropriate sentence, and ultimately what we have here is a situation where nobody knew what was going to happen. That happens in disagreement. I submit that that agreement was negotiated under the backdrop of the Fifth Circuit decisions that I mentioned. So should the appellant's attorney be awake enough to raise these exceptions, everybody would have known at the time that the appeal waiver wouldn't prevent, for instance, a claim that it was a nonexistent offense or the facts didn't constitute a crime. Everyone would have known that if it turned out that the statutory maximum for that crime was much, much lower than the seven years that he got, everyone knew that the government couldn't depend on the appeal waiver to stop this Court from granting relief. So what we're dealing with is what do we do in a situation where it is undisputed that the defendant was convicted of an imaginary or nonexistent crime, but he signed a waiver that, using broad language, might appear to foreclose relief on appeal or postconviction. And my primary point of this presentation, I hope you get it, is that in terms of whether we enforce these kind of waivers exactly as they're written, that horse left the barn long ago, 2002, 2003, in the Fifth Circuit. And the Supreme Court has acknowledged in every jurisdiction in America these waivers are not enforced to the extent that they foreclose everything. So then the question is why? Why would we do that? Why would we stick this defendant with guilt of a nonexistent offense? If the answer is because it looked like a good deal at the time, I would say that that has not — go ahead. I'm sorry, Your Honor. No, go ahead. I would say that that has not been something the Court has previously considered in addressing the scope of the appeal waiver. It is not a case-by-case analysis. Instead, it is, is this the category of claims that would? Would the one on a manifest injustice exception look just holistically? It was what happened here, just or not? Possibly. I mean, the one that we've argued for, because that's what Barnes said we would have to do, at this point would say very limited to one or both of these, nonexistent offense or actually innocent of the charged crime. If we wanted to import Vowsley's actual innocence of more severe crimes that were actually charged with dismiss, I'm fine with that, too, because, again, I meet that one easily. I don't think that you need to go there, and maybe I'm wrong, but I suspect that this Court is probably hesitant to invite another exception to the enforcement of a procedural defense in post-conviction cases, because I think that this Court's precedent already gives me everything that I need. We can call it manifest miscarriage of justice, or we can call it the sprule White-Beamon doctrine, but if you don't buy any of that. The plea agreement itself was entered as part of a plea process, and what the rules and statute and constitution required is that my client be advised of the nature of the offense. And I think this goes to some of your questions earlier, Judge Ho. In Vowsley, what the Court says is, the Supreme Court says is, you can use this intervening decision, Bailey, to show that there was constitutional error at the time, and everybody, everybody, all the courts of appeals had decided the Bailey question the wrong way. So it was exactly a situation where we don't anticipate a change in the law, if you will, or what I would call a recognition of the law. And the Supreme Court says, absolutely, absolutely, you can rely on intervening substantive precedent to show the existence of constitutional error. What if instead of a Supreme Court decision, it was a repeal by Congress? So there's a savings clause, or a, I mean, a savings clause? And it exists at the time, but then Congress repeals it the next day. So there's a savings statute that says that it still applies in that situation, you know, once it's repealed, absent the error, and then if not, I think Congress has to make it retroactive, a repeal, or something like that. So that problem, normally I would say unfortunately when this has happened, but in this case... It sounds unfair to the, right? If I only waited one day, then I wouldn't have pled, because that would be irrational. I mean, this is the first step back to 924C, right? The stacking. I mean, and yes, it's unfair, it's unfortunate. Maybe one day Congress will change that, but current law by statute is that unless Congress says otherwise, you are bound by the statutes that exist. So maybe an example of, we discovered that the President had never signed the act, you know, that made this, or something, something like that. Oh my gosh, this was never a crime in the whole place. I would say we're back in my shoes here, which is to say if it turns out that this is not a crime, we have to start over. You know, if it's procedurally available, which in this case it is, because all the procedural defenses have been waived, it's conceded that my client is innocent. If the Court has no further questions, I've reserved a little time for... I just want to make sure what I, what you just said. You're saying we start completely over. The government, do we go back to the original indictment? Can the government re-indict? What does that mean? I should have been, I should have been clearer, Your Honor. I think we should send it to the defenses. Stop it. I think I would be satisfied with the Court saying, for one or all three of these reasons, it needs to go back to district court. And then the government can say what it wants to, because the government got something out of the plea agreement, too. We both did. They may want to keep it and go forward on the kidnapping charge. They may want to undo the agreement. They may want to seek something more severe and fight about retaliation. I don't know what's going to happen. I think all we want is to reverse the decision on one or more of the issues specified in the COA. Thank you, Your Honor. May it please the Court, Jonathan Bradshaw for the United States. I think one of the things that's running around in all of these cases is, what do we do when you have a change in law? And I want to speak to Chief Judge Richman's question before about retroactivity. The concern was, because Davis is retroactive, then this was always not an offense. That was exactly the case in Barnes. Johnson was retroactive. It was retroactive from Welch. That sentence was illegal in the same way that it was on the day it was imposed, as this crime did not exist on the day that it did. And it's only because of the change in law that happened thereafter. What do you do about the discussion in Barnes that the statutory maximum argument wasn't sufficiently raised? I don't think Barnes forecloses it. This Court could reach it. But to me, Barnes cites cases that predate Leal that hold that you don't get the benefit of a future change in law. And I think the Seventh and the Ninth Circuit have likewise agreed, and even the Fourth Circuit has agreed, that you can waive your ability to challenge a future change in the law. Now, whether you get out by miscarriage of justice or a different way, but I think Barnes and the cases cited in Barnes control on that question. Does your position depend on the type of constitutional problem? I mean, let's say, you know, defendants for years have been saying, oh, the felon in possession statute violates the Commerce Clause, because I don't have to have taken the gun across state lines. It's just the gun has to have been, at some point in its history, brought into Texas from elsewhere. And let's say, finally, the Supreme Court considers that issue and says, yeah, we agree this violates the Commerce Clause. It's beyond Congress's authority to criminalize this conduct. You'd be taking the same position as here, or is it . . . different than this case? On the idea of whether these charges were more serious, the foregone charges, we raised this argument in the district court. He did not respond that these charges were not more serious. We raised this argument on appeal. He did not respond that the charges were not more serious. The drug charge was more serious. The 924C had a stipulated sentence of 84 months. The drug trafficking count would have had a guideline range of 120 to 150. By itself. In addition to that, on the kidnapping, he got his guidelines, he got the benefit of a C plea that essentially cut that guideline range in half. And in addition to all of that, there wasn't one kidnapping that day. He kidnapped three people. And as ROA 426 and 427 note under the grouping rules, he was, his factual resume admitted to those three kidnappings. Each of those, had they been charged, would have carried a maximum sentence of life. So no matter how you measure these charges, guidelines, max sentence, they were more serious. And again, we haven't had the chance to respond to these arguments because we are hearing about them for the first time today. On the idea that this was . . . I think one of the other issues that's been running around is whether if this court is going to recognize a manifest miscarriage of justice exception in relation to the collateral attack waiver, whether it should import Bowsley. And we absolutely think it should. There is . . . first of all, this court has never recognized it and it need not reach it today where there was no manifest miscarriage of justice in this case. Should the court decide otherwise and decide to reach it, I think Bowsley, although it rose in the context of the default doctrine, I think it would control the court's analysis here. And in Bowsley, the rule is where the defendant, in exchange for a very favorable plea, negotiated out from under other charges. He has to show that his actual innocence extends to those charges as well. On the issue of whether the government waived the waiver, I want to speak to that briefly. We did not waive the waiver. The brief relies on the word only. We said that the only issue in this case was the limitations. I think right in context, that had to do with . . . In the 2255, there were originally two claims. There was a claim that Johnson invalidated the sentencing guidelines and a claim that Johnson invalidated the 924C. After the Supreme Court's decision in Beckels, the only remaining claim was the 924C claim, or the only remaining valid claim. And after the decision in DiMaia, the question on that claim at the time was whether it was timely. After DiMaia came down and the case was stayed pending Davis, at that point the district court asked us to respond and we did. I think I've covered the waterfront today. If there are any further questions, I'll be happy to address them. Seeing none, we would ask this court to affirm. Thank you very much. Briefly, Your Honors, on the change of law point, it's in this case in a couple of ways. One of them is a way that we have preserved and submitted in the district court that sort of don't enforce this waiver against us. Because there's a change in law, we couldn't have anticipated that. As I have very nearly conceded in the briefing here, I acknowledge that there are published Fifth Circuit cases against that point. There are published Fifth Circuit cases for that point. The most recent published opinion says that the bad cases win and my good cases lose. So I think that's something I acknowledge, that decision. Barnes says the bad cases win. So as a reason to not enforce the waiver, sort of a freestanding reason, I am urging you to follow the good cases, but I acknowledge the court hasn't. But that is separate from the question of whether or not you are allowed to rely on the new cases, the intervening cases, the change in law. Either in showing an existing exception or in asking for relief. And that's what I was saying, that Bowsley addresses that. In other words, those cases, particularly Davis, is the law. I take your point, Judge Hogue, that we didn't know it at the time, but we have discovered now that all of this time there never was a residual clause to 924C. So with the residual clause in Johnson? I'm sorry? So that's true of Johnson, which is what Barnes is about. Absolutely, Your Honor. And I think that if Barnes had raised the exception, just like United States v. Keele, K-E-E-L-E, with regard to restitution, that's another case where this Court has said if you don't say illegal sentence, then you're stuck in the non-exceptional area of whether or not the language applies or not. So we have said illegal sentence. We have said the facts don't make the crime. But the exception is still there. Maybe in the previous argument there was a discussion about whether or not these exceptions like Spruill, White, Beaumont only apply on direct appeal. I would submit that the differences that exist between direct appeal and 2255 are best addressed through procedural default, which is the doctrine that is designed for that difference. I would have been happy to address procedural default, but the government's waived it in our case. And then in regards to the waiver, the government filed an answer in this case. The rules required them to put all of their defenses in the answer. They did not raise this defense. That is a waiver. Now, we may say that doesn't seem fair or right. They didn't realize what was going to happen, et cetera. Okay. Then now, for the government's benefit, we are going to be flexible on the rules when that seems what's right under the law. One way or the other. Either we apply rules hard and fast, black letter, and we can't help a bad thing. In that case, they waived this defense by not raising it. The original answer to the motion did not raise the plea agreement's waiver of post-conviction rights. This is a defense that was raised a year later. So three years after the original motion was filed is the first time they did it. They did not assert. It wasn't until after Davis that they asserted it. It wasn't until after Davis that they asserted it, when there was nothing to stop them from raising it at the time. So they raised only a limitations defense in the first answer. Then the case was stayed, and then Davis came out, and the court said, okay, file a supplemental answer, and then they raised it. So we argued to the district court. They waived. The operative answer preserved the argument. I'm sorry? The operative answer. Oh, and to be clear. I'm not sure I understand your point then. I'm sorry. No, the point is we told the district court, and one of the issues the court granted a COA on is did they forfeit it by not putting it in their answer. The rules allow them to amend it in the interest of justice, but then we're back on the question of holding someone to a non-existent offense that was not advised of the nature of at the time he pleaded guilty. That's not in the interest of justice. So that was one of the questions the court granted COA on. My friend spoke about it briefly just a second ago, and I wanted to say that. I think they waived it. I certainly am sympathetic to the idea that we should look beyond niceties and get at what's right, but if we're there, I win, too, because what's right is he's not. What's the nicety? No, I get your point that, you know, we're going to be formalistic to one side and flexible to the other. That doesn't seem right. Totally agree. But what's the nicety we're overlooking on behalf of the government? That's what I'm not getting. They made the argument in the supplemental answer, you're allowed to amend your complaint, you're allowed to amend your answer. So I'm missing that point. Our argument was that they cannot amend the answer. The supplemental answer was improper or it was too late to invoke it. You file an answer, you don't raise an affirmative defense, you seek leave from the court and say, would you please give me to do it, and then the response would be, this is not in the interest of justice, it's effectuating a miscarriage of justice. Could they have raised this in the original answer? I thought it wasn't even teed up until... Oh, they certainly could have raised it in the original answer. They chose not to because they thought they would win on limitations. So they did not raise a potentially applicable defense at the time, elected not to do so. It wasn't waived in the sense of an explicit waiver. The way that they have waived limitations now, the way they have waived procedural default. But they didn't put it in. And so, again, I say that's a waiver. We said that below. That's a waiver. You shouldn't consider it. The court granted COA. I don't think you have to reach that question. But in response to the others, if there's no further questions, we ask that you reverse. Thank you, Your Honors. Thank you, Counselor.